UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL K GREGORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00399-JMS-MG |
| ) | |
| DANIEL BEDWELL, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Michael K. Gregory, an inmate at Wabash Valley Correctional Facility ("Wabash Valley"), brought this 42 U.S.C. § 1983 action complaining about the meals he has been served there. Specifically, he alleged that Food Service Director Daniel Bedwell ("Director Bedwell") was deliberately indifferent to his need for adequate and safe food and that Aramark Correctional Services, LLC ("Aramark") had a policy or widespread practice of serving inadequate and unsafe food. Both defendants have moved for summary judgment. Dkt. 31. For the reasons below, the defendants' motion for summary judgment, dkt. [31], is **GRANTED**.

**I. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations

must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. FACTS

The following statement of facts was evaluated pursuant to the standards set forth above. Aramark is a private company that contracts with the Indiana Department of Correction ("IDOC") to supply food services. Dkt. 33-1 at 2-3. Per the contract, Aramark provides meals prepared in accordance with a Master Menu approved by IDOC and a registered dietician. *Id*. at 3. The meals provided to inmates at Wabash Valley meet the caloric and nutritional requirements for inmates

and are adequate to maintain good health. *Id*. Specifically, the Master Menu provides inmates with approximately 2500—2800 calories per day and adequate levels of protein, Vitamin A, Vitamin C, calcium and iron. *Id*. To ensure accuracy and uniformity of serving size, Aramark uses specially designed utensils to portion the foods into each meal tray. *Id*. IDOC also conducts quarterly inspections for compliance with the Master Menu. *Id*. at 4. For each audit performed during the relevant period, Aramark's food service operation was found to be compliant. *Id*.

At all relevant times, Director Bedwell was employed by Aramark as the Food Service Director at Wabash Valley. *Id*. at 1. Director Bedwell oversees the daily food service, including the preparation of daily meals by inmates and Aramark employees. *Id*. at 1-2. Director Bedwell also ensures that the daily meals comply with Aramark's contract with IDOC. *Id*. In addition, Director Bedwell regularly spot checks the prepared meals to ensure proper preparation and safety. *Id*. at 2-3. Neither Aramark nor Director Bedwell allows anything other than food to be placed in the food trays. *Id*. at 4-5. Director Bedwell is aware of intermittent complaints about food issues, but he is not aware of a widespread issue at Wabash Valley regarding foreign substances being found in the inmates' food. *Id*. at 5.

IDOC has a policy through which inmates can request a replacement tray if they receive one that is unsatisfactory. *Id*. at 4. Under this policy (the "Tray Replacement Policy"), complaints about the food trays are brought to correctional officers employed by IDOC. *Id*. Neither Aramark nor Director Bedwell have any control over or involvement with IDOC's Tray Replacement Policy. *Id*. at 5.

At his deposition, Mr. Gregory testified that he could recall five specific issues with meals he received at Wabash Valley. *See* dkt. 33-1 at 7-11. On August 14, 2017, he observed a slimy

substance on his tray and his bread that he believed was saliva. *Id*. at 7. He requested a replacement tray, and his request was denied by an IDOC correctional officer. *Id*.

On August 15, 2017, Mr. Gregory received a tray at breakfast that was supposed to include two ounces of egg and a hot "breakfast bake." Instead, Mr. Gregory's tray contained only a "spoonful of potatoes" and a "sprinkling" of egg. *Id*. at 8. Mr. Gregory reported the issue, and an IDOC correctional officer told him every tray was exactly like his. *Id*.

On one occasion in August or September of 2017, Mr. Gregory found at staple in his potatoes. *Id*. at 9. Mr. Gregory routinely examines his food before eating. *Id*. When he discovered the staple, and he did not eat the potatoes. *Id*. Instead, he reported the staple to a correctional officer. *Id*.

On September 13, 2017, Mr. Gregory received a tray that was supposed to contain "savory stroganoff" but was instead a "congealed blob of what looked and smelled like dog puke." *Id*. at 11. Mr. Gregory "came close to puking" but did not. *Id*. He did not eat the food and instead reported the meal to a correctional officer. *Id.*

Finally, on October 20, 2017, Mr. Gregory received a cup of coffee that had mushy matter in it. *Id*. at 10-11. The mushy matter did not resemble coffee grounds but instead looked like a "vegetable surface." *Id*. at 10. Mr. Gregory drank coffee from the cup, but he stopped drinking when he saw the mushy matter and felt on the verge of vomiting. *Id*. at 10-11. After rinsing his mouth out with water, Mr. Gregory felt better and did not vomit. *Id*. at 11.

### III. DISCUSSION

At screening, the Court found plausible allegations that: (A) Director Bedwell was deliberately indifferent to Mr. Gregory's need for adequate and safe food; and (B) Aramark had a policy or widespread practice of serving inadequate and unsafe food. *See* dkt. 14 at 2. When tested

against the evidence now in the record, however, Mr. Gregory's claims are no longer viable. Accordingly, the defendants are entitled to summary judgment.

Mr. Gregory was a convicted prisoner at all relevant times. This means that the Eighth Amendment applies to his claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Minor injuries do not satisfy the objective component of an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

With respect to food provision, prisoners are entitled to meals that meet minimum caloric and nutritional requirements. *Smith v. Dart*, 803 F.3d 304, 311-12 (7th Cir. 2015). Prison officials "must provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to [their] health and well-being[.]" *Id*. at 312. While the Eighth Amendment does not mandate comfortable prisons, it also does not permit inhumane ones. *See Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012) ("Deliberate withholding of nutritious food or substitution of tainted or otherwise sickening food, with the effect of causing substantial weight loss, vomiting, stomach pains, … or other severe hardship, would violate the Eighth Amendment."). But prisoners are not entitled to "food that is tasty or even appetizing. Indeed, routine discomfort is part of the penalty prisoners pay for their offenses, and prisoners cannot expect the amenities, conveniences, and services of a good hotel." *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004) (cleaned up).

In their motion for summary judgment, Aramark and Director Bedwell argue that Mr. Gregory has failed to show that the alleged deficiencies in his meals posed a substantial risk of serious harm to him, and that even if he had, he cannot show that they acted with deliberate indifference toward his health. *See* dkt. 32 at 11-17.  For the reasons below, the Court agrees.

### A. *Monell* Claim Against Aramark

Although a private entity, Aramark acts under color of state law and therefore may be liable for violating Mr. Gregory's Eighth Amendment rights under the theory of liability set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Walker*, 940 F.3d at 966. "Prevailing on such a claim requires evidence that a[n Aramark] policy, practice, or custom caused a constitutional violation." *Id.* "[A] plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

Mr. Gregory has failed to designate evidence sufficient to create a genuine issue of material fact as to any of these elements. First and foremost, there is no evidence that Mr. Gregory faced any risk to his health that would amount to an objectively serious constitutional deprivation. Rather, the evidence is undisputed that the Master Menu met caloric and nutritional requirements, dkt. 33-1 at 3, that there was no widespread issue at Wabash Valley with respect to meal safety and adequacy, and that Mr. Gregory can recount only five issues with his meals in 2017 and 2018 – specifically, a staple in his potatoes, saliva on his hamburger bun, a small portion of breakfast bake, beef stroganoff that smelled bad, and a sludge-like substance in his coffee. Of these reported issues, only the staple posed a risk to Mr. Gregory's health if consumed.  However, Mr. Gregory

attests that he did not consume any of the food with which he took issue and suffered no consequences requiring medical treatment. Even construing the facts in the light most favorable to Mr. Gregory, these five instances do not amount to a constitutional deprivation. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (noting that extent, duration, and consequences are relevant in determining whether deprivation occurred).

Even if Mr. Gregory could demonstrate an objectively serious deprivation, he has not demonstrated the existence of a policy or custom that would allow him to sustain a *Monell* claim against Aramark. To the extent that Mr. Gregory complains that correctional officers did not replace his meal trays as requested under the IDOC Tray Replacement Policy, any inaction by IDOC employees cannot be attributed to Aramark. In short, Mr. Gregory has failed to present evidence sufficient to create a genuine issue of material fact as to whether the defendants were deliberately indifferent to a substantial risk of serious harm. Thus, Aramark is entitled to judgment as a matter of law because Mr. Gregory has "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323.

### B. Director Bedwell

For the same reasons explained above in Part III-A, Mr. Gregory's claim against Director Bedwell fails on the objective prong. Without demonstrating that the meals served to him posed an excessive risk to his health and safety, Mr. Gregory cannot withstand summary judgment. *Giles*, 914 F.3d at 1051. For that reason alone, Director Bedwell is entitled to summary judgment.

Furthermore, even if Mr. Gregory had shown that he was subjected to an objectively serious condition caused by lack of safe or adequate food, his claim against Director Bedwell would still fail because he has not presented evidence showing that Director Bedwell was subjectively aware of such a condition. The subjective standard "requires more than negligence

and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (internal quotation omitted). "[T]he evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.* at 1030-31. There is no evidence here that Director Bedwell was aware that Mr. Gregory was suffering from any lack of food, diarrhea, vomiting, or weight loss or that Mr. Gregory faced any future risk of a serious condition. *See Williams v. Shah*, 927 F.3d 476, 483 ("That lack of knowledge forecloses any claim against the defendant under the subjective part of the *Farmer* test."). Accordingly, because Mr. Gregory has failed to present evidence sufficient to create a genuine issue of material fact as to whether Director Bedwell was deliberately indifferent to a substantial risk of serious harm, Director Bedwell is entitled to summary judgment.

In sum, Mr. Gregory has not created a genuine issue of fact on either prong, objective or subjective, of his deliberate indifference claims against Aramark and Director Bedwell. Accordingly, both defendants are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons above, the defendants' motion for summary judgment, dkt. [31], is **GRANTED**. The action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this order and the screening entry at Docket No. 14.

Date: 9/24/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MICHAEL K GREGORY
852611
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838